**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

ADIDAS AG, ADIDAS INTERNATIONAL
MARKETING B.V., and ADIDAS AMERICA, INC.,

                Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A,"

                Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, adidas AG, adidas International Marketing B.V., and adidas America, Inc., (collectively "Plaintiffs"), hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling, offering for sale and/or distributing goods using counterfeits and confusingly similar imitations of Plaintiffs' trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" hereto (the "E-commerce Store Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law

claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least their e-commerce stores accessible and doing business in Florida and operating under the E-commerce Store Names. Alternatively, based on their contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.     Plaintiff adidas AG ("adidas AG") is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 1120, D-91072 Herzogenaurach, Federal Republic of Germany.  adidas AG is currently, and for years has been, one of the world's leading manufacturers of athletic footwear and apparel, including products bearing the distinctive **adidas**, , , Three-Stripe Mark, BOOST Mark, and SPLY-350 Mark.

5.      Plaintiff adidas International Marketing B.V. ("adidas International") is a corporation organized and existing under the laws of Netherlands, having its principal place of business in the Netherlands.  adidas International is wholly owned by adidas AG and its affiliates.

6.      Plaintiff adidas America, Inc. ("adidas America") is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon, 97217. adidas America is wholly owned by adidas AG and its affiliates, and within this country adidas America is a licensed distributor of adidas-branded merchandise, including goods using the distinctive **adidas**, **▲**, **❦** , Three-Stripe Mark, BOOST Mark, and SPLY-350 Mark. adidas AG, adidas International, and adidas America shall be referred to herein collectively as "adidas."

7.      Plaintiffs' goods are sold through various channels of trade within the State of Florida, including this district. Defendants, through the offer to sell and sale of counterfeit and infringing versions of Plaintiffs' branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the United States, including within the State of Florida and causing Plaintiffs irreparable harm and damage within this jurisdiction.

8.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks and the destruction of the legitimate market sector in which they operate.

9.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary and other resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet has created an environment that require companies such as Plaintiffs to expend significant resources across a wide spectrum of efforts to protect both consumers and themselves from the confusion and erosion of the goodwill embodied in Plaintiffs' brands.

## THE DEFENDANTS

10.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, the commercial Internet based e-commerce stores under the E-commerce Store Names.

11.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

12.      Defendants are the past and present controlling forces behind the sale of products using counterfeits and infringements of Plaintiffs' trademarks as described herein.

13.      Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods each using counterfeits and infringements of one or more of

Plaintiffs' trademarks to consumers within the United States and this district through e-commerce stores using, at least, the E-commerce Store Names and additional e-commerce store names or aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

14.     Defendants have registered, established, or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

15.     Defendants will likely continue to register or acquire new e-commerce store names or aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods using counterfeit and confusingly similar imitations of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

16.     Defendants' E-commerce Store Names and associated payment accounts, and any other alias e-commerce store names used in connection with the sale of counterfeit and infringing goods using one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' famous names and/or trademarks to drive Internet consumer traffic to their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and

5

decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### adidas's Trademark Rights

17.    adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, apparel, and sporting equipment.  adidas has used its famous and distinctive trademarks, **adidas**, , , Three-Stripe Mark, BOOST Mark, and SPLY-350 Mark (collectively, the "adidas Marks"), for many years in connection with the above-mentioned goods. The adidas Marks signify the quality and reputation of adidas products.

18.    adidas is the owner of multiple trademark registrations for the adidas Marks, including the following valid trademark registrations, issued by the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ADIDAS | 0,891,222 | May 19, 1970 | IC25. sport shoes namely, track and field shoes, baseball, boxing, football, skating, golf, and soccer shoes; sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
|  | 0,973,161 | November 20, 1973 | IC 018. tote bags. IC 25. specific purpose athletic shoes; general purpose sport shoes, sportswear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, and gloves. |
| adidas | 1,300,627 | October 16, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Boots, Shoes, Slippers. |

| | | | |
|---|---|---|---|
|  | 1,310,140 | December 18, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Rain Suits, Ski Suits, Jump Suits, Boots, Shoes, Slippers. |
|  | 1,815,956 | January 11, 1994 | IC 25. athletic footwear. |
|  | 1,833,868 | May 3, 1994 | IC 25. athletic footwear. |
|  | 2,179,796 | August 11, 1998 | IC 025. sports and leisure wear, namely shorts, pants, shirts, T-shirts, jerseys, tights, socks, gloves, jackets, swimwear, sweaters, caps and hats, pullovers, warm-up suits, rain-suits, ski suits, jump suits, boots, slippers, sandals, specific purpose athletic shoes, and general purpose sport shoes. |
|  | 2,278,589 | September 21, 1999 | IC 025. athletic and leisure footwear. |
|  | 2,411,802 | December 12, 2000 | IC 018. All purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks. IC 025. Sports and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits; boots, sandals, specific purpose athletic shoes and general all purpose sports shoes. IC 028. Sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards. |
|  | 3,029,127 | December 13, 2005 | IC 025. Clothing, namely, T-Shirts, sweatshirts, jackets and coats. |
|  | 3,029,129 | December 13, 2005 | IC 025. Footwear. |
|  | 3,029,135 | December 13, 2005 | IC 025. Footwear. |

| | | | |
|---|---|---|---|
| adidas Trefoil logo | 3,104,117 | June 13, 2006 | IC 009. Optical apparatus and instruments, namely, eyeglasses and sunglasses.<br>IC 014. Horological and chronometric instruments, namely, watches<br>IC 018. Leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use, namely, handbags, tote bags, waist packs, overnight bags, backpacks, knapsacks and beach bags; trunks; traveling bags for general and sport use; leather and imitations of leather and goods made from these materials, namely, wallets, briefcases.<br>IC 025. Sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, skorts, dresses, blouses, shirts, T-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes. |
| **BOOST** | 3,580,958 | February 24, 2009 | IC 025. Clothing, namely, shirts; footwear. |
| SPLY-350 | 5,413,495 | February 27, 2018 | IC 025. Footwear. |

The adidas Marks are used in conjunction with the design, manufacture, and distribution of quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the adidas Marks are attached hereto as Composite Exhibit "1."

19.     The adidas Marks have been used in interstate commerce to identify and distinguish adidas products for an extended period of time and serve as symbols of adidas's quality, reputation, and goodwill.

20.     The adidas Marks are well-known and famous and have been for many years. adidas has expended substantial resources developing, advertising and otherwise promoting the adidas Marks. Specifically, adidas has used the adidas Marks in connection with its frequent sponsorship of sports tournaments and organizations, as well as professional athletes and collegiate sports teams. For example, adidas has long-term relationships with the University of Nebraska, Mississippi State University, Texas A&M, and the University of Louisville. Among many others, NBA stars Derrick Rose, James Harden, Trae Young, Damian Lillard, and Donovan Mitchell, NFL stars Aaron Rodgers, Trevor Lawrence, Patrick Mahomes, and Von Miller, NHL star P.K. Subban, baseball player Kris Bryant, and soccer stars David Beckman and Lionel Messi all are sponsored by adidas. For many years, adidas has been a sponsor of the World Cup soccer tournament, as well as several national teams including Argentina, Japan, Mexico, Germany, and Spain. adidas also sponsors the entire MLS, outfitting the twenty-nine teams with all jerseys, training gear, and sideline apparel. Further, adidas has sponsored the world-famous Boston Marathon for more than a decade, and has sponsored many other events, teams, and individuals. Prominent use of the adidas Marks in connection with these sponsorship activities has further enhanced the adidas Marks' recognition and fame.

21.     adidas extensively uses, advertises, and promotes the adidas Marks in the United States in association with the sale of quality products. adidas expends enormous resources promoting the adidas Marks and products bearing the adidas Marks. In recent years, annual sales of products using the adidas Marks have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.

22.     The adidas Marks have achieved secondary meaning among consumers as identifiers of quality goods as a result of adidas's advertisement, promotion, and sale of such goods thereunder.

23.     As a result of adidas's efforts, members of the consuming public readily identify merchandise bearing or sold using the adidas Marks, as being quality merchandise sponsored and approved by adidas.

24.     adidas has carefully monitored and policed the use of the adidas Marks and has never assigned or licensed the adidas Marks to any Defendant in this matter.

25.     Genuine goods bearing the adidas Marks are widely legitimately advertised and promoted by adidas, authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to adidas's overall marketing and consumer education efforts. Thus, adidas expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow adidas and its authorized retailers to educate consumers fairly and legitimately about the value associated with the adidas Marks and the goods sold thereunder.

**Defendants' Infringing Activities**

26.     In blatant disregard of Plaintiffs' rights, Defendants are each promoting, advertising, distributing, offering for sale and/or selling goods in interstate commerce using counterfeits and confusingly similar imitations of one or more of the adidas Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are using the adidas Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce

Store Names.  Defendants are each using identical copies of one or more of the adidas Marks for different quality goods. Plaintiffs have used the adidas Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use the adidas Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' goods are genuine goods originating from, associated with, and/or approved by Plaintiffs.

28.     Defendants advertise their e-commerce stores, including their Counterfeit Goods, to the consuming public via at least the e-commerce stores operating under the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the adidas Marks without Plaintiffs' authority.

29.     Most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the adidas Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiffs' famous names and the adidas Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful

marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the adidas Marks, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

30.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

31.     At all times relevant hereto, Defendants had full knowledge of Plaintiffs' ownership of the adidas Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith.

32.     Defendants' use of the adidas Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

33.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputations.

34.     Defendants' above identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive

consumers, the public, and the trade into believing there is a connection or association between Plaintiffs' genuine goods and Defendants' Counterfeit Goods, which there is not.

35.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate because of Defendants' concurrent actions.

36.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

37.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

38.     Further, Defendants are, upon information and belief, likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

39.     Plaintiffs have no adequate remedy at law.

40.     Plaintiffs are suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the adidas Marks. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

41.     The harm and damage sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

42.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 41 above.

43.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the adidas Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and/or sale of the Counterfeit Goods.

44.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and/or infringements of one or more of the adidas Marks. Defendants are continuously infringing and inducing others to infringe the adidas Marks by using one or more of the adidas Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiffs' branded goods.

45.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

46.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

47.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the adidas Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

48.     Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

### COUNT II - FALSE DESIGNATION OF ORIGIN
### PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

49.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 41 above.

50.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the adidas Marks have been widely advertised and offered for sale throughout the United States via the Internet.

51.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the adidas Marks are virtually identical in appearance to Plaintiffs' genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

52.     Defendants have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols and trade dress which falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full

knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

53.     Defendants have each authorized infringing uses of one or more of the adidas Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

54.     Additionally, many Defendants are simultaneously using counterfeits and infringements of the adidas Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

55.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

56.     Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer both individual and indivisible injury and damages caused by Defendants' concurrent conduct if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## COUNT III - COMMON LAW UNFAIR COMPETITION

57.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 41 above.

58.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods using or bearing marks that are virtually

identical to one or more of the adidas Marks in violation of Florida's common law of unfair competition.

59.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and infringements of one or more of the adidas Marks.  Defendants are also each using counterfeits and infringements of one or more of the adidas Marks to unfairly compete with Plaintiffs for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

60.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the adidas Marks.

61.     Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

62.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 41 above.

63.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods using one or more of the adidas Marks.

64.     Plaintiffs are the owners of all common law rights in and to the adidas Marks.

65.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of the adidas Marks.

66.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing the adidas Marks.

67.     Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## PRAYER FOR RELIEF

68.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act,  and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the adidas Marks; from using the adidas Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through

sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the adidas Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' names or trademarks; and from otherwise unfairly competing with Plaintiffs.

      b.     Entry of temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the adidas Marks.

      c.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C §1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce or domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and

infringements of the adidas Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store or domain name, thus removing them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store or domain name used by Defendants, to the IP addresses where the associated e-commerce stores or websites are hosted.

        d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the E-commerce Store Names, and any other e-commerce store names or domain names used by Defendants to engage in their counterfeiting of the adidas Marks, to Plaintiffs' control so they may no longer be used for unlawful purposes.

        e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators, registrar and/or top level domain (TLD) Registry for the E-commerce Store Names, who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

        f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits and/or infringements of the adidas Marks.

        g.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest,

to their E-commerce Store Name(s), and any other e-commerce store names or domains names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the adidas Marks, to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

       h.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name(s), and any other e-commerce store names or domains names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the adidas Marks, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

       i.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring, upon Plaintiffs' request, Defendants to request in writing the permanent termination of any messaging services, E-commerce Store Names, usernames, and social media accounts they own, operate, or control on any messaging service and social media platform.

       j.     Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount

21

of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

   k.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

   l.  Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or other alias e-commerce store names, domain names, and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

   m.  Entry of an award of pre-judgment interest on the judgment amount.

   n.  Entry of an Order requiring Defendants, at Plaintiffs' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

   o.  Entry of an order for any further relief as the Court may deem just and proper.

DATED: February 29, 2024.       Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **<u>Stephen M. Gaffigan</u>**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
Christine Ann Daley (Fla. Bar No. 98482)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: Christine@smgpa.cloud

Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**